THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19CR187 |
|---|---|---|
| Plaintiff, | ) ) | JUDGE JOHN ADAMS |
| v. | ) ) | **ORDER** |
| JOSHUA NOVAK, | ) ) | |
| Defendant. | ) ) | (Resolves Doc. 16) |

This matter comes before the Court on Defendant Joshua Novak's motion to suppress all evidence gathered against him in execution of a search warrant. For the following reasons, that motion is DENIED.

**I.      Facts**

In January of 2019, Elyria Police employed the use of a confidential informant ("CI") after being advised that the CI could purchase drugs from an individual known as "T.Y." The CI advised that the individual resided at a Tedman Ct. address in Elyria, Ohio and that said individual distributed narcotics from that residence. The police affidavit indicated that the CI was reliable and had previously provided independently verified information and other services relevant to drug trafficking.

Pursuant to this information, Elyria Police organized a "controlled buy" in which the CI purchased less than one gram of crack cocaine. The CI met with "T.Y." at University Hospital Elyria Medical Center and got into a 2000 Ford Taurus driven by "T.Y." to make the exchange.

While the CI was in the vehicle, law enforcement observed it leave the parking lot and travel east before entering a Circle K parking lot. An unknown male approached the vehicle, and a separate drug transaction occurred between "T.Y." and the unknown male. Afterward, the CI was returned to University Hospital Elyria, and later, with the help of investigators, identified "T.Y." as Joshua Novak. Several hours after the controlled buy, investigators observed the 2000 Ford Taurus leaving the Tedman Ct. area and confirmed that the driver was Joshua Novak.

On February 15, 2019, law enforcement conducted a second controlled buy. The CI called Novak and arranged to meet in the area of Midway Mall in Elyria and ordered less than one gram of heroin and cocaine. Novak stated that he only had heroin on him and would purchase cocaine to cook into crack cocaine within the hour. The CI stated that he/she would purchase the heroin now and retrieve the cocaine later. Novak instructed the CI to meet him and stated that he was inside the Tedman Ct. complex. The CI responded that he was in the Midway Mall area and Novak agreed to meet him there. Law enforcement observed Novak leave the Tedman Ct. residence in the 2000 Ford Taurus with another male in the passenger seat, later identified as Christopher Howse, one of Novak's associates.

The CI met Novak and Howse at Midway Mall, where he purchased less than one gram of heroin. At the conclusion of the buy, law enforcement attempted to follow the Ford Taurus, but it left the area at a high rate of speed. The CI contacted Novak and inquired as to the availability of the cocaine. Novak stated that "it was in the pot" before informing the CI that he was in the area of West River Road South and Gateway Blvd. South in Elyria. Law enforcement found Novak's Ford Taurus at a Gateway Blvd. address and confirmed that the residence was that of Myesha Smallwood, the girlfriend of Novak's associate Christopher Howse.

Novak later arranged to meet the CI at Gyro House in Elyria to complete the deal. There, law enforcement observed the CI and another unknown male get into Novak's vehicle. Novak sold drugs to both individuals before the trio parted ways. Novak's residence at Tedman Ct. was under constant surveillance for 48 hours prior to the execution of the warrant. Law enforcement observed Novak go back and forth between the residence and the vehicle.

A search warrant was issued for the Tedman Ct. premises and the 2000 Ford Taurus registered to Novak on February 19th. Among other things, the warrant authorized the seizure of "any contraband; any illegal narcotics; [and] any drug paraphernalia." The warrant was executed on February 21st. At the residence, law enforcement found 7.8 grams of a substance that field tested as fentanyl, a digital scale with apparent drug residue on it, a .25 caliber handgun and a variety of ammunition. The Ford Taurus yielded an additional .9 grams of a substance that tested positive as crack cocaine and 10.1 grams of white substance suspected to be illegal narcotics. Novak now seeks to suppress the evidence gathered against him.

**II.  Analysis**

Novak claims that the affidavit did not establish probable cause to search the Tedman Ct. address. Specifically, he contends that it failed to establish a nexus between criminal activity and his residence.

Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). (citing *United States v. One 1984 Cadillac*, 888 F.2d 1133, 1135 (6th Cir. 1989)). To establish probable cause, an affidavit must provide, under the totality of the circumstances, "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006). (quoting *United States v.*

*Frazier*, 423 F.3d 526, 431 (6th Cir. 2005)). Otherwise stated, there must be "a nexus between the place that is searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). "The critical element is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)(internal quotation marks omitted). "[W]hether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of the circumstances." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016)(citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013)).

Novak's relies upon *McPhearson* and *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009) to argue that the affidavit was insufficient herein. In *McPhearson*, the affidavit lacked facts that would lead to an inference that the defendant was involved in drug trafficking and that evidence of such could be found in his home. *See McPhearson*, 469 F.3d at 525. The mere fact that the defendant was arrested on a warrant for simple assault and that law enforcement found drugs in his pocket during his arrest, absent additional information, was insufficient to warrant a finding of probable cause to search his home for drug activity. *Id.* The quantity of drugs found on his person did not have any bearing on the court's conclusion. *Id.* Instead, crucial to the Court's analysis was the fact that there was an "absence of any facts connecting McPhearson to drug trafficking[.]" *Id.* As the affidavit herein contains numerous facts providing probable cause that Novak was engaged in drug trafficking, *McPhearson* offers no support for his motion.

*Higgins*, similarly, offers little support. In finding that no nexus had been established to search the defendant's home therein, the Sixth Circuit noted: "The second difference between this case and *Allen* is that this affidavit does not assert that the informant had been inside

4

Higgins's apartment, that he had ever seen drugs or other evidence inside Higgins's apartment, or that he had seen any evidence of a crime other than the one that occurred when Higgins allegedly sold him drugs." *Higgins*, 557 F.3d at 390. Similar to the defendant in *Higgins*, Novak argues that a nexus between his Tedman Ct. residence and evidence of drug trafficking was not demonstrated because the affidavit does not assert that he sold drugs or committed other crimes at the residence. In doing so, Novak disregards substantial evidence indicating that he regularly used the Tedman Ct. residence as a base of operation for his sale of drugs. His vehicle was found there several hours after the first controlled buy. He also departed the residence immediately prior to his second sale to the CI. Novak's activity between the residence and his Ford Taurus demonstrated that he was in regular use of both.

More importantly, one significant distinction removes this case from the holding in *Higgins*. In organizing the second controlled buy, the CI spoke to Novak and requested to purchase both heroin and cocaine. Novak told the CI "that he only had heroin on him" and later in the conversation instructed the CI "to meet him and stated that he was inside Wilkes Villa Apartment complex, which is the complex where Tedman Court is located." Doc. 16-1 at 4. As such, the affidavit contains evidence that Novak offered to engage in drug trafficking at the residence and actively possessed the heroin he intended to sell while present in the residence. Accordingly, the information that was lacking in *Higgins* to establish a nexus was contained in the affidavit in this matter.

Based upon the totality of the circumstances described above, the affidavit demonstrated probable cause that evidence of contraband would be found in Novak's residence and vehicle. Accordingly, his motion to suppress lacks merit.

**III. Conclusion**

The affidavit in support of the search warrant at issue amply provided probable cause to search Novak's residence and vehicle. Novak's motion to suppress , therefore, is DENIED.

IT IS SO ORDERED.


Date: June 3, 2019						*/s/  John R. Adams*
							JUDGE JOHN R. ADAMS
							UNITED STATES DISTRICT COURT